HONORABLE TIFFANY M. CARTWRIGHT

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| CONSTRUCTION LOAN SERVICES II, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VBC TRACY LLC; JOHN DOES 1-10,<br><br>Defendants. | Case No. 3:25-cv-05347-TMC<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT VBC TRACY LLC'S MOTION TO DISMISS PURSUANT TO RULES 12(B)(2) AND (6) AND THE DOCTRINE OF FORUM *NON CONVENIENS*, OR IN THE ALTERNATIVE, TO TRANSFER<br><br>NOTE ON MOTION CALENDAR: THURSDAY, JUNE 5, 2025 |

## I. RELIEF REQUESTED

Plaintiff Construction Loan Services II, LLC ("CLS II") respectfully requests the Court deny Defendant VBC Tracy LLC's ("VBC") Motion to Dismiss Pursuant to Rules 12(b)(2) and (6) and the Doctrine of Forum Non Conveniens, or in the Alternative, to Transfer ("Motion to Dismiss") as it is brought improperly before this Court when it does not have original jurisdiction over the case. VBC is wrongly attempting to wield procedural tools to retain a windfall after it received a conspicuously duplicative payment from CLS II. Not only has VBC improperly removed this matter to avoid



**MONTGOMERY PURDUE PLLC**
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

litigating the underlying issues of this case on the merits (which CLS II promptly filed a motion to remand[1] given the clear lack of diversity jurisdiction), but VBC also attempts to enthrall the Court with misconstrued notions that VBC is somehow entitled to duplicative payment under a contract to which CLS II is not a party.

## II. STATEMENT OF FACTS

### A. The Court Must Treat the Allegations in the Complaint as True

For the purposes of VBC's Motion, the Court must consider the following allegations found in CLS II's Plaintiff's Complaint as true:

Plaintiff CLS II and Defendant VBC entered into an Agreement and Bill of Sale dated January 22, 2025 ("Agreement"). As provided therein, CLS II and VBC agreed that CLS II would purchase 214 modular building units from VBC in exchange for $2,561,762.00 ("Purchase Payment").[2] The Agreement specifies the Purchase Payment should be made by wire transfer and includes wire instructions and VBC's account information.[3]

The Agreement is a fully integrated agreement and states that the Agreement constitutes the entire agreement between the parties and any prior understanding or representation of any kind preceding the date of the Agreement shall not be binding upon either party except to the extent incorporated in the Agreement.[4] On or about January 23, 2025, CLS II wired $2,561,762.00 to VBC pursuant to the Agreement.[5]

---

1 Dkt. 5, Motion to Remand and for an Award of Fees and Costs.

2 Dkt. No. 1-3, at p. 2.

3 *Id.*

4 *Id.*

5 *Id.*



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

On or about February 5, 2025, due to an error, CLS II mistakenly sent an additional $2,561,762.00 to VBC ("Duplicate Payment").[6] Upon discovery of the Duplicate Payment, CLS II notified VBC of the error and demanded VBC immediately return the Duplicate Payment funds.[7] VBC is not entitled to the Duplicate Payment funds under the Agreement or otherwise.[8]

VBC acknowledged receipt of the Duplicate Payment.[9] VBC has refused to return the Duplicate Payment funds to CLS II.[10] To date, VBC has failed to return the Duplicate Payment funds to CLS II, which has caused CLS II to suffer damages in the amount of not less than $2,561,762.00.[11] The allegations are indisputable for the purposes of VBC's Motion to Dismiss.

### B. Under Distress, VBC Approaches CLS II to Purchase the Modular Units, Seeking to do Business in Washington State with a Washington Entity

VBC directed its activities toward Washington State by purposefully conducting business with CLS II, a Washington limited liability company. Following some issues associated with a construction project, VBC approached CLS II regarding outstanding amounts owed for the subject modular units and proposed a solution whereby CLS II would purchase from VBC the units already manufactured. During discussions between CLS II and VBC, VBC indicated the company was strapped for cash and would experience financial challenges if the company was not able to liquidate the

---

6 *Id.*, at p. 3.

7 *Id.*

8 *Id.*

9 *Id.*

10 *Id.*

11 *Id.*



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

modular units, which was consistent with prior communications with VBC concerning loan disbursements for the project.[12]

On January 10, 2025, CLS II had a call with VBC's CEO, Vaughan Buckley.[13] During the call, VBC informed CLS II:

1) VBC was owed money from Leap of Faith Partners LLC (its parent company) in relation to the subject multifamily modular condominium complex new construction project and from other entities in connection with two separate projects;

2) VBC was facing financial challenges and the possibility of imminent reorganization (and even alluding to a possible bankruptcy) would be out of VBC's control as a result of the debts; and

3) VBC had lined up another buyer for the modular units it manufactured for the Project and it would be forced to proceed with a fire sale of the units if CLS II did not purchase them by a date certain.[14]

After continued discussions between CLS II and VBC, CLS II agreed to purchase the modular units pursuant to the Bill of Sale.

**C. Procedural History: VBC's Repeated Avoidance of the Merits of this Dispute**

On April 18, 2025, CLS II initiated a lawsuit against VBC in the Pierce County Superior Court, Case No. 25-2-07954-1. Contemporaneous with CLS II's initiation of the Pierce County lawsuit, CLS II filed a Motion for Temporary Restraining Order and for Order to Show Cause ("TRO Motion").[15] As provided in detail therein, CLS II

---

[12] Dkt. No. 1-7, p. 28.

[13] Dkt. No. 1-5, p. 41.

[14] Dkt. No. 1-5, p. 41.

[15] Dkt. No. 1-5, p. 4-15.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

requested issuance of a temporary restraining order against VBC in which the Court would sequester and hold any of the Duplicative Payment pending resolution of the Pierce County lawsuit.[16]

On April 24, 2025, instead of filing any opposition to CLS II's TRO Motion or appearing before the Court to argue the facts of the underlying motion on its merits, VBC chose to wrongfully remove this dispute to the above-captioned Court on the unfounded basis that this Court holds original jurisdiction over the parties (which it does not).[17] CLS II promptly filed its Motion to Remand and for an Award of Fees and Costs ("Motion to Remand") given the clear lack of complete diversity of citizenship amongst the parties (both parties are citizens of Delaware for diversity jurisdiction purposes).[18]

Instead of allowing the parties to proceed in a court with jurisdiction over the parties and CLS II's claims—the Pierce County Superior Court—VBC filed its Motion to Dismiss on May 8, 2025.[19] VBC noted its Motion to Dismiss be heard the week following CLS II's Motion to Remand. As detailed in VBC's Motion to Dismiss, VBC—once more avoiding the underlying facts of this case—attempts to dismiss CLS II's conversion and unjust enrichment claims or simply transfer venues to another court that lacks subject matter jurisdiction over the parties due to the lack of complete diversity of citizenship.

---

[16] Dkt. No. 1-5, p. 42–45.

[17] Dkt. No. 1.

[18] Dkt. No. 5.

[19] Dkt No. 12.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

### D. VBC's Motion to Dismiss is Supported by Facts and Documents Outside the Scope of the Complaint and Beyond the Scope of Determining Solely Personal Jurisdiction

Concurrently with VBC's filing of its Motion to Dismiss, VBC filed the Declaration of Vaughan Buckly in Support of Motion to Dismiss.[20] As provided therein and its supporting attachments, VBC included multiple facts and documents outside the scope of the Complaint. Specifically, VBC included:

- An Agreement Between Owner and Manufacturer between Leap of Faith Partners LLC and VBC, and allegations concerning the contents therein;[21]
- The Agreement and Bill of Sale between CLS II and VBC;[22]
- Allegations that CLS II has not yet taken possession of the subject modular homes;[23]
- Allegations that VBC is incurring storage fees, transportation costs, and damages;[24]
- Hearsay allegations concerning the memo of the Duplicate Payment;[25]
- Allegations stating "VBC did not request or solicit this wire transfer";[26]
- Allegations concerning how VBC wrongfully applied the Duplicate Payment and how it was withholding the Duplicate Payment to "offset" obligations under the Bill of Sale;[27] and

---

[20] Dkt. No. 12-1.

[21] Dkt. No. 12-2.

[22] Dkt. No. 12-3.

[23] Dkt. No. 12-1, at ¶10.

[24] *Id.*, at ¶22.

[25] *Id.*, at ¶23.

[26] *Id.*, at ¶24.

[27] *Id.*, at ¶25–27.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

- Unsupported allegations concerning VBC's alleged costs incurred of "over a million dollars" and "anticipated further losses. . . ."[28]

VBC's inclusion of these allegations and documents is a presentation of information outside the pleadings. Furthermore, it indicates there are genuine issues of material fact that preclude summary judgment at this time.

## III. STATEMENT OF ISSUES

1. Whether the Court should treat VBC's Motion to Dismiss as one for summary judgment when VBC submitted information and documentation outside the pleadings?

2. Whether the Court should deny VBC's Motion to Dismiss, seeking dismissal for lack of personal jurisdiction, when the VBC directed its activities at Washington, approached CLS II (a Washington limited liability company) under the guise of imminent financial distress and sought to benefit from conducting business with the Washington entity, and the Duplicate Payment (unrelated to the Bill of Sale between CLS II and VBC) originated from Washington?

3. Whether the Court should deny VBC's Motion to Dismiss, requesting dismissal for forum *non conveniens*, when the Eastern District of California and the Eastern District of Pennsylvania are improper venues when this Court and the California and Pennsylvania District Courts lack original jurisdiction?

4. Whether the Court should deny VBC's Motion to Dismiss, requesting dismissal for failure to state a claim for conversion, when it is indisputable VBC received the Duplicate Payment in error from CLS II outside the terms of the Bill of Sale, is not entitled to these funds, and wrongfully retained these funds?

---

[28] Dkt No. 12-1, at ¶28.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

5. Whether the Court should deny VBC's Motion to Dismiss, requesting dismissal for failure to state a claim for unjust enrichment when VBC and CLS II do not have a contractual arrangement for the duplicative payments under the Bill of Sale or otherwise?

6. Whether the Court should deny VBC's Motion to Dismiss, requesting to transfer this matter to the Eastern District of California or Eastern District of Pennsylvania, when this Court and the California and Pennsylvania District Courts lack original jurisdiction and the substantial seven figure Duplicate Payment is not related to the modular units and site build in California?

## IV. EVIDENCE RELIED UPON

This Response is supported by the Declaration of Marcus Skeem in Support of Plaintiff's Response to Defendant VBC Tracy's Motion to Dismiss Pursuant to Rules 12(b)(2) and (6) and the Doctrine of Forum *Non Conveniens*, or in the Alternative, to Transfer ("Skeem Declaration") and the record and filings contained therein.

## V. AUTHORITY AND ARGUMENT

### A. It is Entirely Appropriate for the Court to Exercise Personal Jurisdiction Over VBC

This Court has personal jurisdiction over VBC. While the plaintiff bears the burden of demonstrating that jurisdiction is appropriate, "[w]here the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1033 (W.D. Wash. 2018). "Conflicts in affidavits must be resolved in the plaintiff's favor." *Id.* Furthermore, "[u]ncontroverted allegations in the plaintiff's complaint must be taken as true." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits, so the jurisdictional analysis under state law and federal due process are the same. *Wilson*, 349 F. Supp. 3d at 1034. Personal jurisdiction exists in two forms: general and specific. *Id.* at 1033. For specific jurisdiction:

> First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." Finally, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1033–34 (W.D. Wash. 2018) (internal citations omitted). Here, there is no question that VBC purposefully directed its activities and consummated its transactions with CLS II in Washington State. It is undisputed:

1) VBC purposefully directed its activities in Washington by approaching CLS II to consummate a transaction whereby CLS II would purchase and VBC would sell the subject modular units;[29]

2) VBC entered the Agreement and Bill of Sale with CLS II, a Washington limited liability company;[30]

3) VBC intentionally sought to conduct business with CLS II and sell CLS II the modular units for VBC's benefit. For example, VBC advised CLS II that it was "facing financial challenges and the possibility of imminent

---

[29] Dkt. No. 1-5, p. 17.

[30] *Id.*



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

reorganization," even alluding to the possibility of bankruptcy, and that it would be forced to line up another buyer for the modular units if CLS did not purchase the units;[31]

4) VBC received the Duplicate Payment from CLS II, a Washington entity;[32]

5) The Duplicate Payment funds (subject chattel) originated from Washington[33];

6) VBC is unlawfully retaining and unjustly benefitting from the Duplicate Payment funds by wrongfully applying approximately $1,600,000.00 of the Duplicate Payment to amounts it alleges it is owed under the Bill of Sale (the transaction purposefully consummated in Washington with a Washington entity) and the manufacturing agreement (which encompass funds VBC claims it is owed by one of its parent companies, Leap of Faith Partners, LLC);[34] and

7) By unlawfully and unjustly retaining the substantial duplicate payment funds, CLS has and will continue to experience actual and substantial injury as it will be unable to use these funds to operate its business in Washington State and will very likely lose out on other business opportunities to fund other construction project loans with this money.[35]

Not only did VBC purposefully direct its activities to Washington by seeking out and negotiating its business arrangement with CLS II and selling the modular units to

---

[31] Dkt. No. 1-5, p. 41.

[32] *Id.*

[33] Skeem Declaration, ¶5.

[34] *Id.*

[35] Dkt. No. 1-7, p. 32.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

a Washington entity, but the Duplicate Payment—the crux of CLS II's claims against VBC—originated from Washington. VBC is now attempting to unlawfully retain and unjustly benefit from the Duplicate Payment under the guise of the Bill of Sale (a transaction consummated in Washington, which VBC is inconsistently wielding as a shield and sword to avoid jurisdiction and liability here). Taking all these undisputed facts together, it is clear that VBC purposefully directed its activities and transactions towards a Washington company, and the claims brought in this matter arise out of and relate to VBC's Washington related activities. It is entirely reasonable for the Court to exercise its jurisdiction over VBC when VBC purposefully interjected itself in Washington State and none of the acts in question occurred in Pennsylvania or California. Accordingly, VBC's Motion should be denied as to its request for dismissal based on a lack of personal jurisdiction.

### B. The Doctrine of Forum *Non Conveniens* is not Appropriate Here

"In dismissing an action on forum *non conveniens* grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). "The first requirement for a forum *non conveniens* dismissal is that an adequate alternative forum is available to the plaintiff." *Id.* at 1143 (underline added). "The defendant bears the burden of proving the existence of an adequate alternative forum." *Id*.

VBC improperly seeks dismissal of this matter under the Doctrine of Forum Non Conveniens, arguing that the Eastern District of California or the Eastern District of Pennsylvania would be adequate alternative forums. However, VBC does not meet its burden here. VBC completely disregards—even in its opposition to CLS II's Motion to



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

Remand filed May 22, 2025[36]—that there is not complete diversity of citizenship between CLS II and VBC. VBC's very own Corporate and Diversity Disclosure Statement Pursuant LCR 7.1[37] shows it has members domiciled in Delaware, while CLS II's Plaintiff [CLS II's] Rule 7.1 Corporate Disclosure Statement shows it also has members domiciled in Delaware.[38] Therefore, districts in Pennsylvania or California are not adequate forums because both courts lack original jurisdiction over the parties and the claims in this dispute. Notwithstanding, all relevant conduct, witnesses, and evidence related to CLS II's claims against VBC did not occur in the Eastern District of California as the Duplicate Payment originated from Washington after VBC approached a Washington LLC under apparent financial distress.

### C. VBC's Reliance on Information and Documentation Outside the Pleadings Requires this Court to Treat VBC's Motion to Dismiss as a Motion for Summary Judgment

Motions to dismiss are only proper when, "accepting all factual allegations in the complaint as true, there [are] no issue[s] of material fact in dispute. . .." *Wild Fish Conservancy v. United States Envtl. Prot. Agency*, 331 F. Supp. 3d 1210, 1217 (W.D. Wash. 2018). Courts must "assess whether the complaint contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (internal citations omitted).

"If matters outside the pleadings are submitted, the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is treated as one for summary judgment under Federal Rule of Civil Procedure 56." *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). Summary judgment is proper only "if the movant shows that there

---

[36] Dkt. No. 14.

[37] Dkt. No. 2.

[38] Dkt. No. 11.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court no genuine issue of material fact exists." *Scottsdale Ins. Co. v. Thornton*, 300 F. Supp. 3d 1233, 1237–38 (E.D. Wash. 2018). Once the moving party makes this showing, the burden shifts to the moving party to set forth specific facts showing a genuine issue for trial. *Id.* at 1238.

Here, given VBC submitted information outside the pleadings, the Court should treat VBC's Motion to Dismiss as one for summary judgment. Because there are genuine issues of material fact and VBC is incorrect that conversion and unjust enrichment claims are inapplicable to its tortious and unjust conduct, VBC is not entitled to its relief requested as a matter of law.[39] Notwithstanding the foregoing, even if the Court treats VBC's Motion to Dismiss under the standards applicable to motions to dismiss, VBC is still not entitled to its relief requested because CLS II has properly pled its claims against VBC.

### 1. Conversion

"Under Washington law, the elements of conversion are an unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1105 (W.D. Wash. 2011). "Money may be the subject of conversion if the party charged with

---

[39] While there are genuine issues of material fact at this time that preclude summary judgment based on the record before the Court, CLS II reserves all rights and claims, including the right to bring a motion for summary judgment, after any requisite discovery has been performed by the parties.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

conversion wrongfully received the money or had an obligation, which it failed to honor, to return the specific money to the party claiming it." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1039 (9th Cir. 2010). Plaintiffs must have some property interest in the goods allegedly converted. *Id.*

In Washington, it is a longstanding precedent that "the defendants' knowledge or intent are not essential in establishing a conversion." *Judkins v. Sadler-Mac Neil*, 61 Wn.2d 1, 3, 376 P.2d 837 (1962). The foundation of a cause of action for conversion:

> rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action. The plaintiff's right of redress no longer depends upon his showing, in any way, that the defendant did the act in question from wrongful motives, or, generally speaking, even intentionally; and hence the want of such motives, or of intention, is no defense. Nor, indeed, is negligence any necessary part of the case.

*Id.* at 4 (internal quotations omitted).

As is clearly alleged in CLS II's Complaint, VBC's wrongful act was its unlawful retention of the Duplicative Payment. VBC's intent is irrelevant. Additionally, the Duplicate Payment was clearly sent in error—not only were the amounts the exact same as the amounts owed under the Bill of Sale, but CLS II promptly informed VBC the Duplicate Payment was sent in error and demanded VBC return it immediately.[40] Instead of returning the obvious double payment, VBC chose to retain the funds to offset funds "likely due from CLS II to VBC for storage costs and potentially other costs" related to the modular units under the Bill of Sale—costs that were speculative and not yet due. Even further, VBC admits it applied roughly $1,600,000.00 to a different entity —one of its parent companies—under a contract which CLS II is not even a party. If

---

[40] Dkt. No. 1-5, p. 17, ¶11.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

VBC were to incur said costs, then VBC could rightly demand payment or allege a claim for breach of contract under the Bill of Sale. Instead, VBC chose to convert the Duplicate Payment when *it admittedly had no right to the funds*. CLS II's claim is sufficiently stated.

Notwithstanding, disputed facts exist that prevent the Court from dismissing CLS II's conversion claim as a matter of law. VBC admittedly is treating the Duplicate Payment as a "loan disbursement" on behalf of Leap of Faith Partners LLC while CLS II expressly denies this is a loan disbursement.[41] Because there are issues as to a material fact, VBC cannot meet its burden under the summary judgment standard and the Court must deny VBC's request.

**a. Analogous Case Study: *World Cellphones Distributors Corp.***

The facts here are nearly identical to a case involving conversion in Florida. In *World Cellphones Distributors Corp.*, De Surinaamsche Bank, N.V. ("DSB") initiated a wire transfer to serve as payment to a distributer, World Cellphones Corp. ("World Cellphones") in the amount of $119,490.00 on behalf of another company, Prestige Imports N.V. *World Cellphones Distributors Corp. v. De Surinaamsche Bank*, N.V., 357 So. 3d 225, 227 (Fla. Dist. Ct. App. 2023). On December 17, 2017, DBS initiated a wire transfer to World Cellphones. *World Cellphones Distributors Corp. v. De Surinaamsche Bank, N.V.*, 357 So. 3d 225, 227 (Fla. Dist. Ct. App. 2023). On December 18, 2017, Prestige informed DBS that the initial wire transfer beneficiary bank was incorrect and needed to be changed to a different bank. *Id.*

DSB immediately recalled the initial wire transfer and sent a successful wire transfer to the new beneficiary bank on December 19, 2017. *Id.* A month later, DSB

---

[41] Dkt. No. 1-5, p. 18.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

discovered its initial wire transfer was not successfully recalled. *Id.* DSB informed World Cellphones of the duplicative wire transfer and requested that it refund DSB the double payment. *Id.* World Cellphones refused and alleged that it already provided Prestige with goods. *Id.*

DSB eventually filed suit and alleged that World Cellphones was guilty of converting the obviously duplicative funds and moved for summary judgment on this issue. *Id.* at 228. In opposition to DSB's summary judgment motion, World Cellphone filed an affidavit stating that World Cellphones sold Prestige and another company, Flex Wholesale & Retail, N.V. ("Flex"), product in the amount of $366,057.00 in products so World Cellphones applied the two wire transfers to invoices due from Flex.[42] *Id.* The trial court entered summary judgment in favor of DBS on its conversion claim. *Id.* at 229. World Cellphones appealed. *Id.*

The Florida appellate court found:

> Although Appellants challenge the admissibility, and thereby the sufficiency, of DSB's summary judgment evidence on appeal, the record reflects that key facts were indeed undisputed. First, Appellants expressly admitted receiving duplicate wire transfers for $119,490.00 and exercising dominion and control over the wire transfers. Second, Appellants admitted receiving various demands from DSB explaining the banking error and requesting return of the duplicate wire transfer. Third, Appellants did not dispute that they refused to return the duplicate wire transfer.

*Id.* The appellate court further found that World Cellphones "may have been under the mistaken belief that they had a legal right to the duplicate wire transfer based on their subsequent sale of goods to Flex, this affirmative defense is insufficient as a matter of law to preclude a finding of conversion." *Id.* at 229–30.

---

[42] Flex has the same ownership of Prestige.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

The same logic applies here. CLS II sent VBC two separate payments in the identical amount of $2,561,762.00. CLS II, upon discovery of the mistaken duplicate transfer, demanded that VBC return the Duplicate Payment. VBC admits its receipt of the Duplicate Payment. Finally, it is indisputable that VBC did not return the Duplicate Payment. The facts before this Court show CLS II sufficiently plead a claim for conversion under either the standard for a motion to dismiss or under the summary judgment standard. Therefore, CLS II requests the Court deny VBC's request to dismiss CLS II's conversion claim.

**2. Unjust Enrichment**

"The elements of unjust enrichment are: '(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment.'" *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1017 (W.D. Wash. 2019). "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Id.*

All elements of CLS II's unjust enrichment claim are present here. As pled in CLS II's Complaint, VBC retained the benefit of the Duplicate Payment. VBC retained the benefit when it was not entitled to the Duplicate Payment under the terms of the Bill of Sale Agreement. CLS II promptly informed VBC of its error in transmitting the Duplicate Payment. As a matter of law, CLS II sufficiently pled its unjust enrichment claim against VBC.

VBC erroneously asserts that CLS II's claim is "foreclosed" by the existence of the Bill of Sale.[43] VBC's reliance on the Bill of Sale Agreement is misplaced. Nowhere in

---

[43] Dkt. No. 12, p. 13.



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

the Bill of Sale Agreement is VBC entitled to duplicate payment of $2,561,762.00. In fact, it is indisputable the parties *do not* have a contractual relationship for the Duplicate Payment. VBC's provides a contorted justification for keeping the Duplicate Payment, but this justification is just further evidence (outside the pleadings) that it is unjust for VBC to retain the Duplicate Payment. VBC alleges it simply "applied payment to the outstanding amounts owed under the manufacturing agreement and any overpayments are being applied to charges accruing due to CLS' failure to retrieve the modular units from California. . ..”[44] Yet, CLS II is not a party to the manufacturing agreement.[45] Even more notable—VBC appears to be applying the Duplicate Payment for amounts it is owed under the manufacturing agreement by one of its parent companies: Leap of Faith Partners, LLC.[46] VBC is admittedly enriching itself at the expense of CLS II.

Finally, VBC takes issue with CLS II inaction by not removing the modular units from where they are stored. VBC's remedy for this situation is not simply unlawfully retaining the Duplicate Payment under the Bill of Sale Agreement. VBC is entitled to bring a counterclaim for breach of contract for its damages (if any)—yet, VBC simply chooses to utilize the Duplicate Payment as a source in which it can deplete to enrich itself for payment obligations that CLS II does not owe it and that are allegedly owed, in part, by VBC's own parent company.

---

[44] Dkt. No. 12, p. 13.

[45] Dkt. No. 12-2, p. 4.

[46] Dkt. No. 2, pg. 1 (VBC's corporate disclosures)



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

**D. It is not in the Interest of Justice to Transfer this Action to a Location not Available to Plaintiff**

Finally, VBC requests this Court transfer this matter to the Eastern District of California pursuant to 28 U.S.C. § 1404. "This transfer power is, however, expressly limited by the final clause of s 1404(a) restricting transfer to those federal districts in which the action 'might have been brought.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809, 11 L. Ed. 2d 945 (1964). As provided in detail above and in CLS II's motion to remand, the parties indisputably lack complete diversity of citizenship. VBC did not contest the fact that both parties have citizenship in Delaware. Therefore, it is indisputable that this matter could not have been brought in the Eastern District of California given the lack of complete diversity of citizenship of CLS II and VBC.

Notwithstanding, even if this matter could somehow been brought in a district court lacking original jurisdiction (which it could not), it is not in the interest of justice to transfer this matter to the Eastern District of California. As noted in VBC's Motion, the Court weighs numerous factors in determining whether it is in the interest of justice to transfer venues.[47]

Here, VBC misconstrues the facts relevant to this analysis. VBC alleges there is "no connection to a Washington forum."[48] VBC further alleges that all material events rise from the Bill of Sale Agreement and modular building units located in the Eastern District of California.[49] However, CLS II's claims do not stem from the Bill of Sale Agreement. CLS II's claims stem in tort from a Duplicate Payment that is not tied to

---

[47] Dkt. No. 12, p. 15.

[48] *Id.*

[49] *Id.*



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

any part of the Bill of Sale Agreement other than the fact that the wire transfer amounts are duplicative. Put plainly, this is not a claim for breach of contract. Of course, VBC avoids the fact that CLS II is located in Washington and the Duplicate Payment transfer originated in Washington. There is no compelling reason to transfer this matter to a court lacking original jurisdiction for a simple double payment transfer. Accordingly, VBC's request should be denied.

## VI. CONCLUSION

Instead of reaching the merits of the facts plainly before the Court, VBC continues its procedural games to cause further delay and prevent CLS II's access to a court with jurisdiction to hear its request for injunctive relief. VBC approached CLS II (a Washington limited liability company) to enter into a transaction, the entities entered a contract, and VBC received payment under the terms of that contract, all of which stemmed from Washington. Thereafter, VBC received duplicate payment funds from CLS II (Washington entity) it is not entitled to. The duplicate funds originated from Washington.

VBC has refused to return the duplicate funds and has confirmed it is applying it to costs allegedly owed to it under the Bill of Sale (the transaction consummated in Washington whereby VBC sold goods to a Washington entity), and funds it is owed from its own parent company. CLS II's claims arise out of VBC's contacts in Washington. It would not offend "traditional notions of fair play and justice" for Washington to assert jurisdiction over VBC, particularly when VBC is attempting to use its transaction consummated in Washington with a Washington entity to avoid returning the subject duplicate funds.

CLS II's sufficiently pleads its claims for conversion and unjust enrichment against VBC. Once more, instead of litigating the underlying merits of the claims, VBC



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534

presents evidence outside the pleadings in an effort to prematurely dismiss CLS II's claims prior to any parties conducting written and or testimonial discovery.

Finally, VBC fails to show how this Court has authority to transfer this matter to venues which do not have original jurisdiction over the parties. It is proper for this Court to deny VBC's Motion and also remand this case to Pierce County Superior Court to allow the parties to litigate the underlying issues in the case with a court that holds jurisdiction over the parties and CLS II's claims.

DATED this 29th day of May 2025.

I certify this opposition contains 5,106 words, in compliance with the Local Civil Rules.

MONTGOMERY PURDUE PLLC

*s/ Benjamin I. VandenBerghe*
Benjamin I. VandenBerghe
WA State Bar No. 35477
Email: biv@montgomerypurdue.com

*s/ Kaya R. Lurie*
Kaya R. Lurie
WA State Bar No. 51419
Email:
klurie@montgomerypurdue.com

*s/ Michael L. Parrott*
Michael L. Parrott
WA State Bar No. 55703
Email:
mparrott@montgomerypurdue.com

701 Fifth Avenue, Suite 5500
Seattle, WA 98104
Phone: 206-682-7090

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2025, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. Parties may access this filing through the Court's CM/ECF system.

DATED this 29th day of May, 2025.

Lisa j Hanlon

Lisa Hanlon



MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
701 FIFTH AVENUE, SUITE 5500
SEATTLE, WA 98104-7096
TEL (206) 682-7090 FAX (206) 625-9534